UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LUC BURBON AND ON BEHALF OF ALL
OTHER PERSONS SIMILARLY SITUATED,

                Plaintiffs,

                v.

RACHAEL RAY DIGITAL LLC AND
CBS INTERACTIVE, INC.

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**CLASS ACTION COMPLAINT**

No.: <u>1:18-cv-1265</u>

ECF CASE

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     Plaintiff LUC BURBON, on behalf of herself and others similarly situated, asserts the following claims against the Defendants RACHAEL RAY DIGITAL LLC and CBS INTERACTIVE, INC. as follows.

2.     Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

3.     Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.     Plaintiff brings this civil rights action against RACHAEL RAY DIGITAL LLC and CBS INTERACTIVE, INC. ("Defendants") for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. The Defendants' denial of full and equal access to the websites, and therefore denial of its products and services offered thereby and in conjunction with its physical location, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.     Because the Defendants' websites, WWW.RACHAELRAY.COM and WWW.RACHAELRAYSHOW.COM (the "Websites" or "Defendants' websites"), are not equally accessible to blind and visually-impaired consumers, they violate the ADA. Plaintiff seeks a permanent injunction to cause a change in the Defendants' corporate policies, practices, and procedures so that the Defendants' websites will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

7.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

8.     Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) the Defendants' conduct and continue to conduct a substantial and significant amount of

business in this District, the Defendants are subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

9.     The Defendants are subject to personal jurisdiction in this District. The Defendants have been and are committing the acts or omissions alleged herein in the Southern District of New York that caused injury, and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of the Defendants' online and physical location in New York, New York due to the inaccessibility of the Defendants' websites while attempting to access the websites. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Defendants' studio location. This includes, Plaintiff attempting to obtain information about the Defendants' studio (location and hours and other important information) which is located in New York, NY.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

11.     Plaintiff LUC BURBON, at all relevant times, is a resident of Queens, New York. Plaintiff is a blind, visually-impaired, handicapped person and a member of a protected class of individuals under the ADA, 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., the NYSHRL and NYCHRL.

12.     On information and belief, Defendant RACHAEL RAY DIGITAL LLC is and was, at all relevant times herein a Foreign Limited Liability Company organized under the laws of Delaware.  Defendant operates the RACHAEL RAY SHOW studio location as well as the WWW.RACHAELRAY.COM and WWW.RACHAELRAYSHOW.COM websites and those affiliated or directly linked, and advertises, develops, markets, distributes, and/or produces digital content for its television program, sells various categories of merchandise through its websites, provides access to digital clips from recent episodes, information to request tickets for attending upcoming show tapings performed in its New York City studio, maintains up-to-date schedule and guide for local broadcasts of the show in the State of New York and throughout the United States, offer participation in contests and giveaways and the ability to participate other social interactive experiences. The Defendant is, upon information and belief, licensed to do business and is doing business in the State of New York.

13.     On information and belief, Defendant CBS INTERACTIVE, INC. is and was, at all relevant times herein a Foreign Business Corporation organized under the laws of Delaware. The Defendant operates the RACHAEL RAY SHOW studio location as well as the WWW.RACHAELRAY.COM and WWW.RACHAELRAYSHOW.COM websites, and those affiliated or directly linked, and advertises, develops, markets, distributes, and/or produces digital content for its television program, sells various categories of merchandise through its websites, provides access to digital clips from recent episodes, information to request tickets for attending upcoming show tapings performed in its New York City studio, maintains up-to-date schedule and guide for local broadcasts of the show in the State of New York and throughout the United States, offer participation in contests and

giveaways and the ability to participate other social interactive experiences. The Defendant is, upon information and belief, licensed to do business and is doing business in the State of New York.

14.    The Defendants operate the RACHAEL RAY SHOW studio location in New York, New York. This studio location constitutes a place of public accommodation. The Defendants' studio location provides to the public important goods and services. The Defendants' Websites provide consumers with access to an array of goods and services including the purchase of various categories of merchandise, information to request tickets for attending upcoming show tapings, information about the studio location and hours of operation, access to digital clips from recent episodes, access to featured recipes, an up-to-date schedule and guide for local broadcasts of the show, information about upcoming special events and promotions, participation in contest and giveaways, the ability to participate other social interactive experiences and other important information.

15.    The Defendants' studio location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Defendants' Websites are a service, privilege, or advantage that is heavily integrated with the Defendants' physical studio location and operates as a gateway thereto.

<u>NATURE OF ACTION</u>

16.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

17.     In today's tech-savvy world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and services contained thereon. An accessibility notice is put on a website by the creator thereof to showcase that the website is working diligently to create a better experience for low-vision or blind users.

18.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

19.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

20.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established

guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.0 as the standard guideline for accessibility.

21.     Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

        a.     A text equivalent for every non-text element is not provided;

        b.     Title frames with text are not provided for identification and navigation;

        c.     Equivalent text is not provided when using scripts;

        d.     Forms with the same information and functionality as for sighted persons are not provided;

        e.     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

        f.     Text cannot be resized without assistive technology up to 200% without losing content or functionality;

        g.     If the content enforces a time limit, the user is not able to extend, adjust or disable it;

        h.     Web pages do not have titles that describe the topic or purpose;

        i.     The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

<u>STATEMENT OF FACTS</u>

<u>The Defendants' Barriers on Their Websites</u>

-8-

22.     The     Defendants     offer     the     commercial     websites, WWW.RACHAELRAY.COM and WWW.RACHAELRAYSHOW.COM and those affiliated or directly linked, to the public. The websites offer features which should allow all consumers to access the goods and services which the Defendants offer in connection with their physical location. The goods and services offered by the Defendants include, but are not limited to the following, which allow consumers to: find information about the studio location and hours of operation, purchasing various categories of merchandise, information to request tickets for attending upcoming show tapings, access to digital clips from recent episodes, access to featured recipes, schedule and guide for local broadcasts of the show, information about upcoming special events and promotions, participation in contests and giveaways, the ability to participate in other social interactive experiences and other important information.

23.     It is, upon information and belief, the Defendants' policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to the Defendants' websites, and to therefore specifically deny the goods and services that are offered and are heavily integrated with the Defendants' studio location. Due to the Defendants' failure and refusal to remove access barriers to its websites, Plaintiff and visually-impaired persons have been and are still being denied equal access to the Defendants' studio location and the numerous goods, services, and benefits offered to the public through the Websites.

24.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Websites on separate occasions using the JAWS screen-reader.

25.    During Plaintiff's visits to the Websites, the last occurring in January 2018, Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied Plaintiff the full enjoyment of the facilities, goods, and services of the Websites, as well as to the facilities, goods, and services of the Defendants' physical location in New York by being unable to learn more information about the studio location and hours of operation, purchasing various categories of merchandise, information to request tickets for attending upcoming show tapings, access to digital clips from recent episodes, access to featured recipes, access to an up-to-date schedule and guide for local broadcasts of the show in the State of New York and throughout the United States, information about upcoming special events and promotions, participation in contests and giveaways, the ability to participate in other social interactive experiences and other important information.

26.    While attempting to navigate the Websites, Plaintiff encountered multiple accessibility barriers for blind or visually-impaired people that include, but are not limited to, the following:

a.    Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired

RACHAEL RAY SHOW customers and fans are unable to determine what is on the websites, browse, lookup information about the studio location and hours of operation, purchase various categories of merchandise, request tickets for attending upcoming show tapings, access to digital clips from recent episodes, access to featured recipes, schedule and guide for local broadcasts of the show, details for upcoming special events and promotions, information to participate in contests and giveaways, the ability to participate in other social interactive experiences and other important information.

b.     Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

c.     Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d.     Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

<u>The Defendants Must Remove Barriers to Their Websites</u>

27.     Due to the inaccessibility of the Defendants' Websites, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services the Defendants offer to the public on their Websites. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full

and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Websites.

28.    These access barriers on the Defendants' Websites have deterred Plaintiff from visiting the Defendants' physical studio location, and enjoying them equal to sighted individuals because: Plaintiff was unable to find: the location and hours of operation of the Defendants' studio location, information for purchasing various categories of merchandise, information about requesting tickets for upcoming show tapings, an up-to-date schedule and guide for local broadcasts of the show, details for upcoming special events and promotions, information to participate in contests and giveaways, the ability to participate in other social interactive experiences and other important information preventing Plaintiff from visiting the location. Plaintiff intends to visit the Defendants' studio location in the near future if she could access their websites.

29.    If the Websites were equally accessible to all, Plaintiff could independently navigate the Websites and complete desired transactions as sighted individuals do.

30.    Through her attempts to use the Websites, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

31.    Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Websites, Plaintiff alleges that the Defendants have engaged in acts of intentional discrimination, including, but not limited to, the following policies or practices:

a.    Constructing and maintaining websites that are inaccessible to visually-impaired individuals, including Plaintiff;

-12-

        b.      Failure to construct and maintain websites that are sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

        c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

32.     The Defendants therefore use standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

33.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

34.     Because the Defendants' Websites have never been equally accessible, and because the Defendants lack a corporate policy that are reasonably calculated to cause their Websites to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring the Defendants to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist the Defendants to comply with WCAG 2.0 guidelines for the Defendants' Websites. The Websites must be accessible for individuals with disabilities who use computers, laptops, tablets and smart phones. Plaintiff seeks that this permanent injunction requires the Defendants to cooperate with the Agreed Upon Consultant to:

a.      Train the Defendants' employees and agents who develop the Websites on accessibility compliance under the WCAG 2.0 guidelines;

b.      Regularly check the accessibility of the Websites under the WCAG 2.0 guidelines;

c.      Regularly test user accessibility by blind or vision-impaired persons to ensure that the Defendants' Websites comply under the WCAG 2.0 guidelines; and,

d.      Develop an accessibility policy that is clearly disclosed on the Defendants' Websites, with contact information for users to report accessibility-related problems and require that any third-party vendors who participate on their Websites to be fully accessible to the disabled by conforming with WCAG 2.0 criteria.

35.     If the Websites were accessible, Plaintiff and similarly situated blind and visually-impaired people could independently view service items, locate the Defendants' studio and hours of operation, shop for and otherwise research related products and services available via the Websites and participate in special promotions and other events.

36.     Although the Defendants may currently have centralized policies regarding maintaining and operating their Websites, the Defendants lack a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

37.     The Defendants have, upon information and belief, invested substantial sums in developing and maintaining their Websites and has generated significant revenue from the Websites. These amounts are far greater than the associated cost of making the Websites equally accessible to visually impaired customers.

38.     Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Websites, violating their rights.

CLASS ACTION ALLEGATIONS

39.     Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access the Defendants' Websites and as a result have been denied access to the equal enjoyment of goods and services offered in the Defendants' physical location, during the relevant statutory period.

40.     Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York State subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Defendants' Websites and as a result have been denied access to the equal enjoyment of goods and services offered in the Defendants' physical location, during the relevant statutory period.

41.     Plaintiff, on behalf of herself and all others similarly situated, seeks certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access the Defendants' Websites and as a result have been denied access to the equal enjoyment of goods and services offered in the Defendants' physical location, during the relevant statutory period.

42.     Common questions of law and fact exist amongst Class, including:

a.      Whether the Defendants' Websites are a "public accommodation" under the ADA;

      b.      Whether the Defendants' Websites are a "place or provider of public accommodation" under the NYSHRL or NYCHRL;

      c.      Whether the Defendants' Websites deny the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

      d.      Whether the Defendants' Websites deny the full and equal enjoyment of their goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL or NYCHRL.

43.     Plaintiff's claims are typical of the Class. The Class, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that the Defendants have violated the ADA, NYSHRL or NYCHRL by failing to update or remove access barriers on the Websites so it can be independently accessible to the Class.

44.     Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

45.     Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

46.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

### FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

47.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

48.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

49.    The Defendants' studio location is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). the Defendants' Websites are a service, privilege, or advantage of the Defendants' studio location. The Website is a service that is heavily integrated with this location and is a gateway thereto.

50.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

51.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation,

which is equal to the opportunities afforded to other individuals. 42 U.S.C. §

12182(b)(1)(A)(ii).

52.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination

also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures,
> when such modifications are necessary to afford such goods, services, facilities,
> privileges, advantages, or accommodations to individuals with disabilities, unless
> the entity can demonstrate that making such modifications would fundamentally
> alter the nature of such goods, services, facilities, privileges, advantages or
> accommodations; and a failure to take such steps as may be necessary to ensure that
> no individual with a disability is excluded, denied services, segregated or otherwise
> treated differently than other individuals because of the absence of auxiliary aids
> and services, unless the entity can demonstrate that taking such steps would
> fundamentally alter the nature of the good, service, facility, privilege, advantage,
> or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

53.     The acts alleged herein constitute violations of Title III of the ADA, and the

regulations promulgated thereunder. Plaintiff, who is a member of a protected class of

persons under the ADA, has a physical disability that substantially limits the major life

activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore,

Plaintiff has been denied full and equal access to the Websites, has not been provided

services that are provided to other patrons who are not disabled, and has been provided

services that are inferior to the services provided to non-disabled persons. The Defendants

have failed to take any prompt and equitable steps to remedy its discriminatory conduct.

These violations are ongoing.

54.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth

and incorporated therein, Plaintiff, requests relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATIONS OF THE NYSHRL

55.     Plaintiff, on behalf of herself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

56.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

57.     The Defendants' physical locations are located in State of New York and throughout the United States and constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). The Defendants' Websites are a service, privilege or advantage of the Defendants. The Defendants' Websites are a service that is heavily integrated with these physical locations and is a gateway thereto.

58.     The Defendants are subject to New York Human Rights Law because they own and operate its physical location and Websites. The Defendants are a person within the meaning of N.Y. Exec. Law § 292(1).

59.     The Defendants are violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the Websites, causing the Websites and the services integrated with the Defendants' physical location to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that the Defendants make available to the non-disabled public.

60.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden".

61.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

62.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make the Websites accessible would neither fundamentally alter the nature of the Defendants' business nor result in an undue burden to the Defendants.

63.     The Defendants' actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the NYSHRL, N.Y. Exec. Law § 296(2) in that the Defendants have:

a.      constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.      constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

64.     The Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

65.     The Defendants discriminate, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Defendants' Websites and its physical location under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins the Defendants from continuing to engage in these unlawful practices, Plaintiff and the State Sub-Class Members will continue to suffer irreparable harm.

66.     The Defendants' actions were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

67.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq.* for each and every offense.

68.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

69.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK STATE CIVIL RIGHTS LAW

70.    Plaintiff, on behalf of herself and the New York State Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.    Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

72.    N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

73.    N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

74.    The Defendants' New York State physical location is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2). The Defendants' Websites are a service, privilege or advantage of the Defendants and the Websites are a service that is heavily integrated with the establishment and is a gateway thereto.

75.     The Defendants are subject to New York Civil Rights Law because they own and operate its physical location and Websites. The Defendants are a person within the meaning of N.Y. Civil Law § 40-c(2).

76.     The Defendants are violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to their Websites, causing the Websites and the services integrated with the Defendants' physical location to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that the Defendants make available to the non-disabled public.

77.     N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

78.     Under NY Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside ..."

79.     The Defendants have failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

80.     The Defendants discriminate, and will continue in the future to discriminate against Plaintiff and New York State Sub-Class Members on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations,

advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

81.     Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines under N.Y. Civil Law § 40 *et seq.* for each and every offense.

FOURTH CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

82.     Plaintiff, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

83.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

84.     The Defendants' location is a sales establishment and public accommodation within the definition of N.Y.C. Admin. Code § 8-102(9), and the Websites are a service that is heavily integrated with its establishment and is a gateway thereto.

85.     The Defendants are subject to NYCHRL because they own and operate its physical location in the City of New York and the Websites, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

86.     The Defendants are violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the Websites, causing the Websites and the

services integrated with its physical location to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that the Defendants make available to the non-disabled public.

87.    The Defendants are required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

88.    The Defendants' actions constitute willful intentional discrimination against the City Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that the Defendants have:

a.    constructed and maintained websites that are inaccessible to blind class members with knowledge of the discrimination; and/or

b.    constructed and maintained websites that are sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

89.    The Defendants have failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

90.    As such, the Defendants discriminate, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and City Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, accommodations and/or opportunities of its Websites and its establishments under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins the Defendants from continuing to engage in these unlawful practices, Plaintiff and members of the City Subclass will continue to suffer irreparable harm.

91.    The Defendants' actions were and are in violation of the NYCHRL and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

92.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense and punitive damages pursuant to § 8-502(a).

93.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

94.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>FIFTH CAUSE OF ACTION</u>
DECLARATORY RELIEF

95.    Plaintiff, on behalf of herself and the Class and New York State and City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that the Defendants deny, that their Websites contain access barriers denying blind customers the full and equal access to the goods, services and facilities of the Websites and by extension its physical location, which the Defendants own, operate and control and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§

12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

97.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit the Defendants from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b.     A preliminary and permanent injunction requiring the Defendants to take all the steps necessary to make the Websites fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the Websites are readily accessible to and usable by blind individuals;

c.     A declaration that the Defendants own, maintain and/or operate their Websites in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq*., N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

d.     An order certifying the Class and the State and City Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

f.    Pre- and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: February 13, 2018

LAW OFFICE OF AVI A. NAVEH, ESQ.

S/ Avi A. Naveh
Avi A. Naveh
175 Varick Street, 3rd Floor
New York, NY 10014
Tel: 646.881.4471
Fax: 661.430.4471
avi@navehlaw.com

Jeffrey M. Gottlieb     (JG-7905)
Dana L. Gottlieb        (DG-6151)
GOTTLIEB & ASSOCIATES
150 East 18th Street, Suite PHR
New York, New York 10003
Tel: 212.228.9795
Fax: 212.982.6284
nyjg@aol.com
danalgottlieb@aol.com